Hurley *v.* Kolligian.

MARION L. HURLEY *vs.* J. MARK KOLLIGIAN & another, trustees, & others.

Middlesex.    April 5, 1955. — November 4, 1955.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Zoning.*

A decision of the zoning board of appeals of a city must be annulled as in excess of the board's authority under G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, and as amended, in granting a variance permitting use of an area in a residence district for parking of automobiles in connection with an automobile sales, repairing and servicing business conducted in a garage on adjacent premises, since any "substantial hardship" involved related to the garage premises rather than to the area respecting which the variance had been sought.

BILL IN EQUITY, filed in the Superior Court on January 19, 1954.

The suit was heard by *O'Connell*, J.

*John A. Daly*, for the plaintiff.

*George A. McLaughlin*, (*Arthur M. Gilman* with him,) for the defendants Kolligian and another, trustees.

No argument nor brief for the defendants board of appeals of Cambridge and another.

SPALDING, J.    This is a bill in equity under G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, as amended, by way of appeal from a decision of the board of appeals granting a variance with respect to the use of certain property in Cambridge as an off-street parking lot. The judge made findings of fact and an order for decree, and pursuant thereto a decree was entered that the decision of the board did not exceed its authority and that no modification of it was required.    The plaintiff appealed. The case comes here with a report of the evidence.

There is virtually no dispute as to the facts.    Facts found by the judge and by us are these.    J. Mark Kolligian and Koren Kolligian are trustees of the Kolligian Realty Trust and will hereinafter sometimes be referred to as the defendants.    The realty trust owns a brick building at 456

Broadway, Cambridge, which it leases to Kolligian Motors, Inc., hereinafter called the corporation, of which J. Mark and Koren Kolligian are officers. Since 1945, the corporation has carried on the business of selling, repairing, and servicing automobiles on these premises as a nonconforming use. In 1953 the realty trust acquired title to two parcels of real estate located at 452 and 450–450A Broadway. These premises are adjacent to the garage occupied by the corporation, and consist of two stucco apartment houses. It is the area in the rear of these apartment houses that is involved in this litigation. The defendants desire to use this space for parking twenty automobiles, five in the rear of number 452 and fifteen in the rear of numbers 450–450A. The area is reached by a driveway running between the two parcels from Broadway. Part of the area here involved is in a Residence C–1 district and part is in a Residence C–2 district. With minor exceptions not here material business and commercial uses are prohibited in both districts. The intended use of the area would be related to the conduct of the business of selling and repairing automobiles carried on at 456 Broadway by the corporation. The defendants concede that without a variance the use of the area for a parking space accessory to the business of the corporation would not be permissible, and to obtain such a variance the defendants applied to the board of appeals.

Finding that streets in the vicinity were congested, that it would be an unnecessary hardship on the defendants to deny the variance, that such a variance (with restrictions) would not detract from the residential character of the neighborhood but would serve it in its need for parking space, and that the variance, if granted, would not derogate from the intent and purpose of the city's zoning ordinance, the board of appeals granted the variance, subject, however, to certain restrictions.[1]

---

[1] Under these restrictions the parking of automobiles is limited to those of customers, officers, and employees of the corporation, and no signs are to be displayed. Trucks, commercial vehicles, and automobiles for sale are excluded. Parking is limited to the period between 7 A.M. and 7 P.M. Evergreens of a designated size are to be planted on the rear and two sides of the parking area. The privilege is limited for the period of three years.

With respect to the character of the neighborhood the judge made these findings. "Almost directly opposite the locus is situated the Rindge Manual Training School . . . and closely adjoining the latter is the Cambridge High and Latin School. Both . . . institutions carry large enrollments of scholars, and . . . large teaching staffs, bringing into the immediate vicinity numerous automobiles during school hours. The locus is a very short distance . . . from the yard of Harvard College . . . . The general locality . . . can be properly termed residential save for . . . a small number of stores, [and] a second garage located a few hundred feet from the Kolligian Garage. The New England Telephone & Telegraph Co. has a general headquarters in a large business structure approximately 250 feet . . . from the rear . . . of the 'area' in question, and a parking space accommodating a considerable number of automobiles used by employees and for business purposes of the company. An apartment house [owned by the plaintiff] comprising fifty-two apartments is contiguous to the parking area in question and the garage [of the corporation]." Thirty-five tenants as part of their tenancy are furnished with outdoor parking privileges in the rear of the apartment house.

The judge concluded that the variance would benefit the public welfare by affording relief to the overcrowding of thoroughfares by automobile traffic or automobiles parked in thoroughfares in the immediate vicinity; that "off-street" private parking spaces are in use near by but they are wholly inadequate to cope with the overcrowded conditions; that these conditions will grow worse rather than better; that the variance will benefit the community; and that the proposed use would not be detrimental to the values or enjoyment of either the adjoining properties or those in the immediate vicinity.

Under § 30 the board of appeals was empowered to grant a variance "where, owing to conditions especially affecting such parcel but not affecting generally the zoning district in which it is located, a literal enforcement of . . . [the

zoning ordinance] would involve substantial hardship to
the appellant, and where desirable relief may be granted
without substantial detriment to the public good and with-
out substantially derogating from the intent or purpose of
. . . [the ordinance], but not otherwise."

Relying heavily on *Brackett* v. *Board of Appeal of Boston*,
311 Mass. 52, the plaintiff argues that there was no hard-
ship of the sort mentioned in § 30. We are of opinion that
this contention must be sustained. That case involved the
propriety of a decision granting a variance in Boston under
§ 19 of the zoning law of that city, St. 1924, c. 488. The
applicant was a corporation which owned and operated a
hotel. In order to alleviate its parking problem it purchased
a lot near by in a general residence district and sought a
variance to permit the parking of automobiles thereon.
Section 19 of c. 488 provided that the board of appeal could
vary the application of the zoning law "in specific cases
wherein its enforcement would involve practical difficulty
or unnecessary hardship and wherein desirable relief may
be granted without substantially derogating from the in-
tent and purpose of . . . [the law], but not otherwise."
It was held that the "unnecessary hardship" mentioned in
the statute must relate to the premises for which the vari-
ance was sought. By that test the only hardship to the
corporation was with respect to its ownership of the hotel
and not with respect to its ownership of the lot for which
the variance was sought. Accordingly, it was held that the
requirements of the statute relating to hardship had not
been satisfied and that the board of appeal exceeded its au-
thority in granting a variance.

The facts in the case at bar are substantially the same
as those in the *Brackett* case on the issue of hardship. The
hardship here does not relate to the premises for which the
variance is sought. Rather it relates to other property
owned by the defendants, namely the garage. As the judge
found, "The intended use of the 'area' would be related to
the . . . business of . . . [the corporation] and to relieve
overcrowded conditions within its garage, repair shops and

salesroom." The *Brackett* case is, therefore, controlling unless it can be said that there are differences in the statute here involved which call for a different result. While the wording of the two statutes varies somewhat, the differences touching the matter of hardship are not such as to take the present case out of the rule in the *Brackett* case. If anything, the present statute makes a stronger case for the application of that principle, for it authorizes variances only "where, owing to conditions *especially affecting such parcel* but not affecting generally the zoning district in which it is located, a literal enforcement of . . . [the zoning ordinance] would involve substantial hardship to the appellant . . ." (emphasis supplied). The defendants stress the point that § 30 speaks of hardship "to the appellant" whereas the statute involved in the *Brackett* case did not. But that difference in our opinion is not material. Under the statute in the *Brackett* case the hardship likewise must have been suffered by the person seeking the variance. Section 30 merely made explicit that which was implied in § 19 of the 1924 statute.

This is the opinion of a majority of the court.

The decree is reversed and a decree is to be entered stating that the decision of the board of appeals of Cambridge was in excess of its authority and is annulled; and that the clerk of the court within thirty days after the entry of the decree send an attested copy thereof to the board and to the superintendent of buildings of Cambridge.

*So ordered.*